## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re

Case No. 09-32553

THOMAS HOMES, LLC

   Debtor

SMOKY MOUNTAIN TITLE, INC. and
DOUGLAS S. YATES, TRUSTEE

    Plaintiffs

   v.

Adv. Proc. No. 10-3129

TENNESSEE STATE BANK,
DANIEL E. THOMAS,
JEAN P. THOMAS,
BLALOCK LUMBER COMPANY, L.P.
d/b/a BLALOCK READY MIX,
CENTURY 21 MVP, ART-TECH
SURFACING, INC., TINDELL'S INC.,
and THE STATE OF TENNESSEE

    Defendants

  and

N. DAVID ROBERTS, JR., TRUSTEE

    Defendant/Cross-Claimant

## MEMORANDUM ON
## MOTIONS FOR SUMMARY JUDGMENT

**APPEARANCES:** HODGES, DOUGHTY & CARSON, PLLC
    Thomas H. Dickenson, Esq.
    Oliver D. Adams, Esq.
    Post Office Box 869
    Knoxville, Tennessee  37901-0869
    NORTON, SPANGLER & CRAMER, P.C.
    W. Mitchell Cramer, Esq.
    1111 Northshore Drive, N.W.
    Suite P-270
    Knoxville, Tennessee  37919
    Attorneys for Plaintiffs

FRANTZ, MCCONNELL & SEYMOUR, LLP
  Michael W. Ewell, Esq.
  Post Office Box 39
  Knoxville, Tennessee  37901
  Attorneys for Defendant/Cross-Claimant N. David Roberts, Jr., Trustee

HAGOOD, TARPY & COX, PLLC
  T. Lynn Tarpy, Esq.
  900 South Gay Street
  Suite 2100 Riverview Tower
  Knoxville, Tennessee  37902
  Attorneys for Defendants Daniel E. Thomas and Jean P. Thomas

WINCHESTER, SELLERS, FOSTER & STEELE, P.C.
  Melinda Meador, Esq.
  J. Michael Winchester, Esq.
  Post Office Box 2428
  Knoxville, Tennessee  37901-2428
  Attorneys for Defendant Tennessee State Bank

WOOLF, McCLANE, BRIGHT, ALLEN & CARPENTER
  Gregory C. Logue, Esq.
  900 South Gay Street
  Suite 900 Riverview Tower
  Knoxville, Tennessee  37902
  Attorneys for Defendant Blalock Lumber Company, L.P.
    d/b/a Blalock Ready Mix

FREDERICK L. CONRAD, JR., ESQ.
  Post Office Box 11202
  Knoxville, Tennessee  37939-1202
  Attorney for Defendant Tindell's, Inc.

ROBERT E. COOPER, ESQ.
TENNESSEE ATTORNEY GENERAL AND REPORTER
  William F. McCormick, Esq.
  Post Office Box 20207
  Nashville, Tennessee  37202-0207
  Attorneys for Defendant The State of Tennessee

2

CENTURY 21 MVP
   209 East Main Street
   Sevierville, Tennessee  37862
   Defendant

ART-TECH SURFACING, INC.
   301 South Gallaher View Road
   Suite 230
   Knoxville, Tennessee  37919
   Defendant

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding is before the court on the Complaint by Smoky Mountain Title, Inc. and Douglas S. Yates, Trustee, to Determine the Validity, Priority, and Extent of a Lien and for Equitable Relief (Complaint) filed by the Plaintiffs on November 24, 2010. By the Complaint, the Plaintiffs seek a determination that the Defendant Tennessee State Bank holds a lien superior to the interests of all other Defendants in real property known as 1651 Shady Grove Road, Sevierville, Tennessee (Shady Grove Road Property).[1]

On August 24, 2011, the Defendant N. David Roberts, Jr., Trustee (Chapter 7 Trustee), filed a Motion for Summary Judgment on Behalf of Defendant N. David Roberts, Jr., Trustee (Trustee's Motion for Summary Judgment) accompanied by a brief and Statement of Material Facts by Defendant N. David Roberts, Jr., Trustee (Trustee's Statement of Undisputed Facts) as required by E.D. Tenn. LBR 7056-1, along with four exhibits: (1) the Affidavit of N. David Roberts, Jr. in Support of Motion for Summary Judgment dated August 3, 2011; (2) the Affidavit of James E. Bondurant, Jr., in Support of Motion for Summary Judgment dated August 22, 2011, to which are appended four additional exhibits: (A) a Deed of Trust dated September 13, 2007 (Deed of Trust), executed by the Defendants Daniel E. Thomas and Jean P. Thomas securing obligations of the Thomases owing Tennessee State Bank with the Shady Grove Road Property; (B) a Title Report on

---

[1] The Defendants Daniel E. Thomas and Jean P. Thomas were parties to the transactions at issue in this adversary proceeding, and the Defendant N. David Roberts, Jr., Trustee, is the Trustee in the Thomas Homes, LLC Chapter 7 bankruptcy case. The Defendants Blalock Lumber Company, L.P. d/b/a Blalock Ready Mix, Century 21 MVP, Art-Tech Surfacing, Inc., and Tindell's, Inc. all obtained judgments against Thomas Homes, LLC prior to the commencement of its bankruptcy case, which have been recorded in the Office of the Sevier County Register of Deeds. The Defendant The State of Tennessee has recorded a tax lien against Thomas Homes, LLC. The Defendant N. David Roberts, Jr., Trustee, filed an Answer and Cross Claim on January 25, 2011, asserting a counterclaim against the Defendants Blalock Lumber Company, L.P. d/b/a Blalock Ready Mix, Century 21 MVP, Art-Tech Surfacing, Inc., Tindell's, Inc., and The State of Tennessee seeking to avoid the judgments and tax lien under 11 U.S.C. §§ 547(b) and/or 549 (2006). Orders avoiding these liens have been entered with respect to each of these five Defendants. Those orders relate solely to the crossclaims asserted by the Defendant N. David Roberts, Jr., Trustee.

the Shady Grove Road Property dated September 12, 2010, prepared by the affiant, Mr. Bondurant, for the period of September 12, 1970, at 8:00 a.m. through September 12, 2010, at 8:00 a.m.; (C) a Quit Claim Deed dated September 13, 2007 (Quit Claim Deed), executed by Daniel E. Thomas and Jean P. Thomas (the Thomases) conveying the Shady Grove Road Property to Thomas Homes, LLC, the Debtor; (D) a General Warranty Deed dated September 13, 2007 (Warranty Deed), executed by Rolando Prieto and Zoe Maria Prieto (the Prietos) conveying the Shady Grove Road Property to the Thomases; (3) Smoky Mountain Title, Inc.'s Responses to Request for Admissions Propounded to Plaintiffs dated July 15, 2011; and (4) Tennessee State Bank's Responses to Trustee's Request for Admissions, Interrogatories, and Request for Production of Documents dated July 14, 2011.

On August 25, 2011, the Plaintiffs filed the Motion for Summary Judgment of Smoky Mountain Title, Inc. and Douglas S. Yates (Plaintiffs' Motion for Summary Judgment) accompanied by, as required by E.D. Tenn. LBR 7056-1, a brief and the Statement of Undisputed Facts in Support [of] Motion for Summary Judgment of Smoky Mountain Title, Inc. and Douglas S. Yates (Plaintiffs' Statement of Undisputed Facts), together with two exhibits: (A) the Affidavit of Douglas S. Yates dated August 25, 2011, attaching as Exhibits A, B, and C, respectively, the Warranty Deed, the Deed of Trust, and the Quit Claim Deed; and (B) Search Results from the Sevier County Register of Deeds for the Debtor Thomas Homes, LLC, as grantor/grantee and as debtor/secured party from January 1, 2007 through January 13, 2008, for Daniel Thomas as grantor/grantee and debtor/secured party from January 1, 2007 through January 10, 2008, and for Jean Thomas as grantor/grantee and debtor/secured party from January 1, 2007 through January 10, 2008.

Pursuant to E.D. Tenn. LBR 7056-1, on September 14, 2011, the Plaintiffs filed the Response of Smoky Mountain Title, Inc. and Douglas S. Yates to Motion for Summary Judgment of N. David Roberts, Jr., Trustee (Plaintiffs' Response), which is supported by (A) the Supplemental Affidavit of Douglas S. Yates and two additional exhibits appended thereto:  (B) Search Results from the Sevier County Register of Deeds for Daniel Thomas as grantor/grantee and debtor/secured party from September 1, 2007 to present; and (C) Detail Information for Instrument No. 07053143, the Quit Claim Deed executed by the Thomases conveying the Shady Grove Road Property to the Debtor for Year 2007.  The Plaintiffs additionally filed the Response of Smoky Mountain Title, Inc. and Douglas S. Yates to Statement of Undisputed Facts in Support of Motion for Summary Judgment of N. David Roberts, Jr., Trustee, and a responsive brief in opposition to the Trustee's Motion for Summary Judgment on September 14, 2011, and on September 28, 2011, the Trustee filed the Response of N. David Roberts, Jr., Trustee, to Plaintiffs' Statement of Additional Facts as set forth in the Supplemental Yates Affidavit.

On September 15, 2011, pursuant to E.D. Tenn. LBR 7056-1, the Trustee filed the Response of N. David Roberts, Jr., Trustee, to Plaintiffs' Motion for Summary Judgment (Trustee's Response), the Response of N. David Roberts, Jr., Trustee, to Plaintiffs' Statement of Undisputed Facts and Statement of Additional Undisputed Material Facts (Trustee's Statement of Additional Undisputed Facts), and a responsive brief in opposition to the Plaintiffs' Motion for Summary Judgment.  The Plaintiffs did not file a Response to the Trustee's Statement of Additional Undisputed Facts within fourteen days, and, pursuant to E.D. Tenn. LBR 7056-1(c), the facts set forth in the Trustee's Statement of Additional Undisputed Facts are deemed admitted.

6

Tennessee State Bank filed the Response of Tennessee State Bank to Motions for Summary Judgment of Plaintiffs Smoky Mountain Title, Inc. and Douglas S. Yates, and of Defendant N. David Roberts, Jr., Trustee, on September 14, 2011, stating that the only remaining questions to be determined by the court – whether Tennessee State Bank is an equitable lienholder and whether reformation is an appropriate remedy – have been thoroughly briefed by the Plaintiffs and the Trustee, agreeing that there are no genuine issues as to material facts, and agreeing that the matter is ripe for summary judgment based upon the correctly stated facts set forth by the Trustee and not disputed by the Plaintiffs.  None of the remaining Defendants responded to the Plaintiffs' Motion for Summary Judgment.

On September 15, 2011, the Trustee filed the Motion of N. David Roberts, Jr., Trustee, to Strike Supplemental Affidavit of Douglas S. Yates (Motion to Strike) attaching as an exhibit N. David Roberts, Jr., Trustee Preliminary Expert Disclosure identifying James E. Bondurant, Jr. as a prospective expert witness and incorporating therein the Title Report prepared by Mr. Bondurant and his Biographical Information.  The Trustee also filed a brief in support of the Motion to Strike. On September 20, 2011, the Plaintiffs filed the Response of Smoky Mountain Title, Inc. and Douglas S. Yates to Motion to Strike of N. David Roberts, Jr., Trustee (Response to Motion to Strike).

## I

On September 13, 2007, the Thomases obtained a loan in the amount of $165,000.00 from Tennessee State Bank and used $144,500.00 of the proceeds to purchase the Shady Grove Road

7

Property from the Prietos by way of the Warranty Deed.  TRUSTEE'S STMT. OF UNDISP. FACTS at ¶ 1; PLAINTIFFS' STMT. OF UNDISP. FACTS at ¶¶ 1-2; BONDURANT AFF. at ¶ 5, EX. D; YATES AFF. at ¶ 4, EX. A.  As security for the loan from Tennessee State Bank, the Thomases, also on September 13, 2007, executed the Deed of Trust, conveying the Shady Grove Road Property in trust to the Plaintiff, Douglas S. Yates, Trustee.  TRUSTEE'S STMT. OF UNDISP. FACTS at ¶ 3; PLAINTIFFS' STMT. OF UNDISP. FACTS at ¶¶ 3-4; BONDURANT AFF. at ¶ 3, EX. A; YATES AFF. at ¶ 4, EX. B.  Additionally, on September 13, 2007, the Thomases executed the Quit Claim Deed, conveying the Shady Grove Road Property to the Debtor Thomas Homes, LLC.  TRUSTEE'S STMT. OF UNDISP. FACTS at ¶ 2; PLAINTIFFS' STMT. OF UNDISP. FACTS at ¶ 5; BONDURANT AFF. at ¶ 5, EX. D; YATES AFF. at ¶ 4, EX. C.

As a function of its title services in connection with the closing of the loan to the Thomases secured by the Shady Grove Road Property, the Plaintiff Smoky Mountain Title, Inc. hand delivered the Warranty Deed, Deed of Trust, and Quit Claim Deed, in that order, to the Sevier County Register of Deeds for recording, along with a check to pay the recording fees and transfer taxes for the Warranty Deed and Deed of Trust.  TRUSTEE'S STMT. OF UNDISP. FACTS at ¶¶ 4-5; PLAINTIFFS' STMT. OF UNDISP. FACTS at ¶¶ 6-9; TRUSTEE'S STMT. OF ADD'L UNDISP. FACTS at ¶¶ 1-2, EX. 1 at ¶ 7, EX. 2 at ¶ 8; YATES AFF. at ¶¶ 3-5; TRUSTEE'S EX. 3 at ¶¶ 1, 3.  All three deeds were recorded with the Sevier County Register of Deeds on September 14, 2007, at 9:43 a.m.  PLAINTIFFS' STMT. OF UNDISP. FACTS at ¶ 7; TRUSTEE'S STMT. OF ADD'L UNDISP. FACTS at ¶¶ 2-4; YATES AFF. at ¶ 5, EX. A, EX. B, EX. C.  The Plaintiffs and Tennessee State Bank intended that the Deed of Trust be recorded immediately after the Warranty Deed, with the Quit Claim Deed to be recorded last;

8

however, the documents were, as evidenced by the instrument and Deed Book page numbers assigned them by the Sevier County Register of Deeds, recorded in the following sequence: the Warranty Deed from the Prietos to the Thomases, assigned Instrument No. 07053142, was recorded in Book 2910, page 309, the Quit Claim Deed from the Thomases to the Debtor, assigned Instrument No. 07053143, was recorded in Book 2910, page 311, and the Deed of Trust from the Thomases to Douglas S. Yates, Trustee, securing the $165,000.00 loan from Tennessee State Bank, assigned Instrument No. 07053144, was recorded in Book 2910, page 313. TRUSTEE'S STMT. OF UNDISP. FACTS at ¶ 6; PLAINTIFFS' STMT. OF UNDISP. FACTS at ¶¶ 8, 10, 12; TRUSTEE'S STMT. OF ADD'L UNDISP. FACTS at ¶ 3; BONDURANT AFF. at ¶¶ 3, 5-6, EXS. A, C, D; YATES AFF. at ¶¶ 5-6. Thereafter, the Plaintiffs prepared a title report for Tennessee State Bank dated September 26, 2007, in which they represented that the Shady Grove Road Property was owned by the Thomases subject to exceptions, including the Deed of Trust. TRUSTEE'S STMT. OF ADD'L UNDISP. FACTS COLL. EX. 4; TRUSTEE'S EX. 3 at ¶ 9; TRUSTEE'S EX. 4 at ¶¶ 4-5.

The Debtor filed the Voluntary Petition commencing its case under Chapter 7 on May 8, 2009, and the Trustee was duly appointed. TRUSTEE'S STMT. OF UNDISP. FACTS at ¶ 16; PLAINTIFFS' STMT. OF UNDISP. FACTS at ¶ 13; ROBERTS AFF. at ¶ 2. At the time of his appointment, the Trustee had no actual knowledge of the Deed of Trust. TRUSTEE'S STMT. OF UNDISP. FACTS at ¶ 17; TRUSTEE'S STMT. OF ADD'L UNDISP. FACTS at ¶ 14; ROBERTS AFF. at ¶ 5. The Trustee was apprised that the Debtor owned the Shady Grove Road Property by virtue of the Quit Claim Deed in November 2009, at which time he also received information about the Deed of Trust. ROBERTS AFF. at ¶¶ 3-4.

## II

Rule 56(a) of the Federal Rules of Civil Procedure states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law[,]" utilizing the following procedures:

(1) ***Supporting Factual Positions***.  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2) ***Objection That a Fact Is Not Supported by Admissible Evidence***.  A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3) ***Materials Not Cited***.  The court need consider only the cited materials, but it may consider other materials in the record.

(4) ***Affidavits or Declarations***.  An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED. R. CIV. P. 56(c) (applicable in adversary proceedings by virtue of Rule 7056 of the Federal Rules of Bankruptcy Procedure).

When deciding a motion for summary judgment, the court does not weigh the evidence to determine the truth of the matter asserted but simply determines whether a genuine issue for trial exists, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The moving party bears the burden of proving that, based upon the record presented to the court, there is no genuine dispute concerning any material fact and the opposing party's claims are factually unsupported, entitling him to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Owens Corning v. Nat'l Union Fire Ins. Co.*, 257 F.3d 484, 491 (6th Cir. 2001). The burden then shifts to the nonmoving party to prove that there are genuine disputes of material fact for trial through the use of affidavits or other evidence although reliance solely on allegations or denials contained in the pleadings or "mere scintilla of evidence in support of the nonmoving party will not be sufficient." *Nye v. CSX Transp., Inc.*, 437 F.3d 556, 563 (6th Cir. 2006); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

The facts and all resulting inferences are viewed in a light most favorable to the non-movant, with the court deciding whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 106 S. Ct. at 2512. Nevertheless, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 106 S. Ct. at 1356 (citations omitted). The Trustee, through his Motion For Summary Judgment, seeks summary judgment that the Plaintiffs cannot establish the necessary elements to enforce an equitable lien having priority over the Trustee's rights established by 11 U.S.C. § 544(a) (2006) to the Shady Grove Road Property and, therefore, the recording order of the Warranty Deed, Quit Claim Deed, and Deed of Trust cannot be reformed. Conversely, the Plaintiffs, by their Motion

11

for Summary Judgment, seek a judgment declaring that Tennessee State Bank holds a first priority lien against the Shady Grove Road Property. Based upon the record, the court finds that there is no genuine dispute as to any material fact and that the Plaintiffs are entitled to judgment as a matter of law that the Trustee does not possess the status of a bona fide purchaser, thus allowing the imposition of an equitable lien in favor of Tennessee State Bank.

### III

### The Motion to Strike

Affidavits filed in support of or in opposition to summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). These requirements are mandatory, and an affidavit not satisfying Rule 56(c)(4) may be subject to a motion to strike. *See Collazos-Cruz v. United States*, 117 F.3d 1420 (Table), 1997 WL 377037, at *2, 1997 U.S. App. LEXIS 17196, at *6-7 (6th Cir. 1997). The Trustee, by his Motion to Strike, seeks to strike the Supplemental Yates Affidavit, arguing that it presents expert testimony by Mr. Yates even though he was not disclosed or identified by the Plaintiffs as an expert witness. The Trustee grounds his objection on Rule 701 of the Federal Rules of Evidence which provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

FED. R. EVID. 701.[2]  In opposition, the Plaintiffs argue that the Supplemental Yates Affidavit is harmless and presents testimony of a percipient witness.

Courts have broad discretion to exclude untimely expert witness testimony pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure, which provides, in material part, that "[i]f a party fails to . . . identify a witness as required by Rule 26(a) or (e)[3], the party is not allowed to use that . . . witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  FED. R. CIV. P. 37(c)(1); *see also Tomlinson v. Collins*, 2011 WL 478835, at 2, 2011 U.S. Dist. LEXIS 11372, at *6 (S.D. Ohio Feb. 7, 2011) ("[A] trial judge should not exclude expert testimony unless the failure to disclose testimony or to supplement such disclosures is both unjustified and harmful . . . [and t]he failure to provide the information earlier . . . result[s] in prejudice."); *Vance v. United States*, 182 F.3d 920 (Table), 1999 WL 455435, at *5, 1999 U.S. App. LEXIS 14943, at *16-17 (6th Cir. June 25, 1999) (stating that "harmless involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party.") (citing Advisory Committee Notes to 1993 Amendments for Rule 37(c)(1)).  Additionally, "[t]estimony in the form of an opinion is permissible so long as it is 1) rationally based on the

---

[2] **Testimony by Experts**

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702. Rules 701 and 702 are quoted as worded prior to the stylistic amendments to the Federal Rules of Evidence that became effective on December 1, 2011.

[3] Subsection (a) of Rule 26 governs the duty of disclosure and provides the general provisions governing discovery.  Subsection (e) requires parties to supplement disclosures and responses to the extent they are incomplete and/or additional information is discovered.

perception of the witness, 2) helpful to a clear understanding of the witness'[s] testimony, and 3) is not based on technical knowledge within the scope of Rule 702." *In re Iron Workers Local 25 Pension Fund*, 2011 WL 1256657, at *8, 2011 U.S. Dist. LEXIS 34505, at *22 (E.D. Mich. Mar. 31, 2011) (citing FED. R. EVID. 701).  In summary, expert testimony is the witness's analysis based on specialized knowledge, and percipient witness testimony is based on the witness's first hand observations and processes. *Britz Fertilizers, Inc. v. Bayer Corp.*, 2009 WL 1748775, at *3, 2009 U.S. Dist. LEXIS 57947, at *7 (E.D. Cal. June 17, 2009).

The Plaintiffs argue that Mr. Yates is a fact witness and, therefore, the Supplemental Yates Affidavit explaining what a person would see when reviewing the grantor and grantee indexes in the Sevier County Register of Deeds Office contains admissible percipient testimony based on his first-hand experience and observations, irrespective of the fact that he possesses the specialized knowledge of his business.  With respect to the portions of the Supplemental Yates Affidavit in which Mr. Yates gives opinion testimony concerning title examinations, the Plaintiffs argue that the testimony is harmless in that the Trustee was well aware that Mr. Yates provided title and closing services for the Debtor, was thus intimately involved with the transactions upon which the adversary proceeding is based, and any testimony – opinion or otherwise – given by him in connection with those services should have been expected.

The court disagrees with the Plaintiffs' assessment that the testimony is harmless and finds that the Supplemental Yates Affidavit contains opinion testimony based upon his specialized knowledge obtained through his "nineteen years experience in real estate, title, closing, and escrow matters[,]" SUPP. YATES AFF. at ¶ 2, which should have been disclosed.  While it is accurate that the

14

Trustee was aware that Mr. Yates had performed the title services for the Thomases in connection with these transactions, it is equally accurate that the Plaintiffs could have easily disclosed in their Rule 26(a) disclosures that Mr. Yates would be offering expert testimony outside the scope of that representation, as is clearly a large portion of the content of the Supplemental Yates Affidavit. Additionally, the testimony set forth therein is prejudicial to the Trustee in that it offers an expert opinion in response to the Bondurant Affidavit without offering the Trustee an opportunity to prepare for rebuttal.

The court will allow into the record paragraphs 1 and 2 in their entirety, as they merely state identifying information concerning the Plaintiffs.  The court will likewise allow into the record sentences 4 through 6 and sentence 10 of paragraph 5, wherein Mr. Yates describes what he actually observed and reviewed – and what any layperson would also discover – through a search of the records in the Sevier County Register of Deeds Office.  Exhibits B and C attached to the Supplemental Yates Affidavit will also be allowed.  The remainder of the Supplemental Yates Affidavit, however, will be stricken and was not considered by the court in its resolution of the pending Motions for Summary Judgment.

## IV

### The Motions for Summary Judgment

By their Complaint, the Plaintiffs seek as a remedy either reformation of the filing order assigned the three deeds by the Sevier County Register of Deeds to reflect the recording of the Deed of Trust prior to that of the Quit Claim Deed or imposition of an equitable lien in favor of Tennessee State Bank.  "Pursuant to Tennessee law, a court of equity, under certain conditions, will reform an

15

instrument or deed when it fails to reflect the true intent of the parties." *Holiday Hospitality Franchising, Inc. v. States Res., Inc.*, 232 S.W.3d 41, 51 (Tenn. Ct. App. 2006). "The basic purpose of reformation is to make the contract 'conform to the real intention of the parties.'" *Sikora v. Vanderploeg*, 212 S.W.3d 277, 287 (Tenn. Ct. App. 2006) (quoting *Lebo v. Green*, 426 S.W.2d 489, 494 (1968)). "The error in the instrument must have occurred because of the mutual mistake of the parties or because of one party's mistake induced by the other party's fraud." *Holiday Hospitality Franchising*, 232 S.W.3d at 51. A mutual mistake is defined as "a mistake common to all the parties to the written contract or the instrument or in other words it is a mistake of all the parties laboring under the same misconception[,]" *Collier v. Walls*, 369 S.W.2d 747, 760 (Tenn. Ct. App. 1962), and reformation requires clear and convincing evidence of the mistake. *Sikora*, 212 S.W.3d at 287. Here, there is nothing within the Deed of Trust and/or the Quit Claim Deed that constitutes a mutual mistake between the parties thereto. Instead, the mistake alleged by the Plaintiffs involves the office of the Sevier County Register of Deeds, which is not a party to either of the documents or to this adversary proceeding. Accordingly, reformation is not an appropriate remedy.

However, "[t]he existence of an equitable lien in the creditor provides the foundation for a court to restore a released deed of trust to its priority position." *Holiday Hospitality Franchising*, 232 S.W.3d at 52. "An equitable lien is a right, not recognized at law, to have a fund or specific property, or its proceeds, applied in whole or in part, to the payment of a particular debt." *Greer v. Am. Sec. Ins. Co.*, 445 S.W.2d 904, 907 (Tenn. 1969); *see also Gurley v. Mills (In re Gurley)*, 222 B.R. 124, 134 (Bankr. W.D. Tenn. 1998) ("An equitable lien is a judicially created security interest in property held by the defendant."). "Where there is a clear intent to make particular property a security for debt, equity will treat the agreement to give a mortgage or a lien, as effective to create

16

an equitable lien, where money has been parted with on faith there will be a compliance[.]"

*Robertson v. Wade*, 68 S.W.2d 487, 493-94 (Tenn. Ct. App. 1933).  "In order to create an equitable

lien, there must be proof (1) that the parties intended to make the particular property a security for

the obligation, (2) that valuable consideration passed between the parties, and (3) there is an

equitable reason for imposing the lien."  *Ewing v. Smith*, 1986 WL 2582, at *5, 1986 Tenn. App.

LEXIS 2803, at *18 (Tenn. Ct. App. Feb. 26, 1986) (citations omitted).  "A court of equity will

restore a lien where the parties intended that it should not be extinguished, so long as the intervening

rights of third parties do not prevent the reinstatement."  *Holiday Hospitality Franchising*, 232

S.W.3d at 52.

In his role as Chapter 7 Trustee, pursuant to 11 U.S.C. §§ 323(a) and 704(1) (2006), the

Trustee became the representative of the Debtor's bankruptcy estate, succeeding to all of the interests

of Thomas Homes, LLC in property of the estate and inheriting the responsibility to use estate

property for the best interests of creditors, including the sale of property if necessary.  To aid in the

exercise of these statutory duties, the Bankruptcy Code has afforded the Trustee a number of powers,

including the "strong-arm provision," which provides, in material part:

> (a) The trustee shall have, as of the commencement of the case, and without regard
> to any knowledge of the trustee or of any creditor, the rights and powers of, or may
> avoid any transfer of property of the debtor or any obligation incurred by the debtor
> that is voidable by –
>
> . . . .
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor,
> against whom applicable law permits such transfer to be perfected, that
> obtains the status of a bona fide purchaser and has perfected such transfer at
> the time of the commencement of the case, whether or not such a purchaser
> exists.

11 U.S.C. § 544(a)(3). Through this subsection, "the Trustee is considered a bona fide purchaser of the Debtor's property and may therefore avoid certain obligations placed on the property that are voidable under state law." *Rogan v. Am. Gen. Home Equity, Inc. (In re Brockman)*, 451 B.R. 421, 425 (B.A.P. 6th Cir. 2011). In other words, "the trustee hypothetically purchases the debtor's property at the commencement of the bankruptcy case, then determines whether it is subject to any valid prior interests." *Gregory v. Ocwen Fed. Bank (In re Biggs)*, 377 F.3d 515, 517 (6th Cir. 2004).

Although his authority is vested through federal bankruptcy law, whether the Trustee possesses the status of a bona fide purchaser is determined under applicable state law. *Tibble v. Wells Fargo Bank, N.A. (In re Hudson)*, 455 B.R. 648, 652 (Bankr. W.D. Mich. 2011). "Under Tennessee law, '[a] bonafide [sic] purchaser is one who buys for a valuable consideration without knowledge or notice of facts material to the title.'" *Walker v. Elam (In re Fowler)*, 201 B.R. 771, 778 (Bankr. E.D. Tenn. 1996) (quoting *Henderson v. Lawrence*, 369 S.W.2d 553, 556 (1963)); *see also Jones v. First Cmty. Bank E. Tenn. (In re Silver Dollar, LLC)*, 2008 WL 53695, at *3, 2008 U.S. Dist. LEXIS 162, at *9 (E.D. Tenn. Jan. 2, 2008) (adopting the same definition); *Rogers v. First Nat'l Bank*, 2006 WL 344759, at *12, 2006 Tenn. App. LEXIS 97, at *36 (Tenn. Ct. App. Feb. 14, 2006) (defining bona fide purchaser as "[o]ne who buys something for value without notice of another's claim to the item or of any defects in the seller's title; one who has in good faith paid valuable consideration for property without notice of prior adverse claims.") (quoting BLACK'S LAW DICTIONARY 1249 (7th ed. 1999)).

With respect to the imposition of an equitable lien, "the intervening rights of bona fide purchasers without notice – rights also possessed by the bankruptcy trustee under the strong arm

provisions of the Bankruptcy Code – would preclude the reinstatement of a mistakenly released deed of trust if the purchaser could assert lack of notice." *Holiday Hospitality Franchising*, 232 S.W.3d at 54. "As a hypothetical bona fide purchaser, the Trustee, under § 544(a)(3), is deemed to have conducted a title search, paid value for the property, and perfected its interest as a legal titleholder as of the date of the commencement of the case. However, the Trustee's right as a bona fide purchaser does not override state recording statutes and permit avoidance of any interest of which the Trustee would have constructive notice under state law." *Silver Dollar, LLC*, 2008 WL 53695, at *3, 2008 U.S. Dist. LEXIS 162, at *9 (citations omitted).

"Notice is generally said to take two forms, actual or constructive. Constructive notice is notice implied or imputed by operation of law and arises as a result of the legal act of recording an instrument under a statute by which recordation has the effect of constructive notice." *Blevins v. Johnson County*, 746 S.W.2d 678, 682-83 (Tenn. 1988). Pursuant to Tennessee Code Annotated § 66-26-102 (2004), "[a]ll instruments registered pursuant to § 66-24-101 [including deeds of trust pursuant to § 66-24-101(a)(8)] shall be notice to all the world from the time they are noted for registration, as prescribed in § 8-13-108; and shall take effect from such time." Without registration, deeds of trust are still effective between the parties, "but as to other persons, not having actual notice of them, only from the noting thereof for registration on the books of the register, unless otherwise expressly provided[,]" TENN. CODE ANN. § 66-26-101 (Supp. 2010), and "[a]ny instruments not so registered, or noted for registration, shall be null and void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice." TENN. CODE ANN. § 66-26-103 (Supp. 2010). "[T]he operation of constructive notice differs from that of actual (or inquiry) notice because 'actual notice binds the conscience of the party; constructive notice, by mere operation of the registry

19

acts, may bind his title, but not his conscience. . . .  The object of registration is to give notice to creditors and subsequent purchasers.'  Actual or inquiry notice depends on the surrounding circumstances." *Blevins*, 746 S.W.2d at 684 (quoting *Moore v. Cole*, 289 S.W.2d 695, 698 (1956)).

In his Affidavit, Mr. Bondurant testified that, at the Trustee's request, he examined the title and prepared a title report regarding the Shady Grove Road Property.  BONDURANT AFF. at ¶¶ 3-4, Ex. B.  Under applicable industry standards, his title examination involved reviewing the indexes maintained by the Register of Deeds and reviewing the instruments in the chain of title. BONDURANT AFF. at ¶ 8.  Through his examination, which encompassed the period from September 12, 1970, at 8:00 a.m. through September 12, 2010, at 8:00 a.m., Mr. Bondurant confirmed that the Warranty Deed conveyed the property to the Thomases and stated that the next event, the recording of the Quit Claim Deed from the Thomases to the Debtor, ended the chain of title for the Shady Grove Road Property, with the Deed of Trust falling outside the chain of title because it was recorded after the Quit Claim Deed.  BONDURANT AFF. at ¶¶ 5-7.  Notwithstanding his conclusion that the Deed of Trust fell outside the chain of title, its existence was not ignored by Mr. Bondurant, who states the following in his Title Report:

> Noted opposite each subdivision hereunder are all matters found to be inimical to the fee simple marketable character of the titled examined.

1. MORTGAGES, DEEDS OF TRUST, OR OTHER LIENS.

(a)    Please be advised that there appears of record a Deed of Trust from Daniel E. Thomas, Jr. and wife, Jean P. Thomas to Douglas S. Yates, Trustee for Tennessee State Bank, to secure a loan dated September 13, 2007, in the original amount of $165,000.00, said Deed of Trust dated September 13, 2007, and recorded on September 14, 2007 at 9:43 a.m. in Book 2910, page 313, in the Sevier County Register of Deeds Office.  Please be advised that this Deed of Trust was recorded after that Quit Claim Deed from Daniel E. Thomas, Jr. and wife, Jean P. Thomas to Thomas Homes, LLC,

20

> dated September 13, 2007, and recorded on September 14, 2007 at 9:43 a.m.,
> in Book 2910, page 311, in the Sevier County Register of Deeds Office. This
> Deed of Trust does not appear in the chain of title for the property since it is
> recorded after a conveyance of the property. Reference to this Deed of Trust
> has been provided for informational purposes; you should ascertain to your
> satisfaction the effect of this Deed of Trust, if any, on the subject property.

BONDURANT AFF. Ex. B at 1. Mr. Bondurant also testified that under applicable standards related

to title examination, no obligation or duty exists to search outside the chain of title or to review the

notebook maintained by the Register of Deeds which indicates the time an instrument is received.

BONDURANT AFF. at ¶¶ 6, 8.

With respect to the filing of the documents, Mr. Yates testified that he has, for nineteen years,

routinely delivered documents to the Register of Deeds by tendering them in the order in which they

are to be recorded, as further evidenced by the fact that Smoky Mountain Title, Inc. tendered a check

to cover the recording fees and transfer taxes for only the Warranty Deed and Deed of Trust and not

the Quit Claim Deed, and that the Sevier County Register of Deeds recorded the documents contrary

to his intent as well as the intent of Tennessee State Bank and the Thomases. YATES AFF. at ¶¶ 5-6.

Mr. Bondurant, however, stated that, in the exercise of ordinary care, a title services provider should

verify the recording order to confirm that the chain of title reflects the parties' intent and if an error

is discovered, take immediate steps to remedy it. BONDURANT AFF. at ¶ 10.

There is no dispute that, at the time of his appointment, the Trustee did not actually know that

the Warranty Deed, Deed of Trust, and/or the Quit Claim Deed had been executed between the

Thomases, Tennessee State Bank, and the Debtor. Likewise, based upon the foregoing recording

statutes, the Trustee did not have constructive notice since the Deed of Trust was filed after the Quit

Claim Deed.  Nevertheless, the courts in Tennessee also recognize inquiry notice as a form of notice

falling somewhere between actual and constructive notice.

> While "[i]t is true that recordation creates constructive notice as distinguished from
> actual notice, in that ordinary actual notice is when one sees with his eyes that
> something is done," *Moore v. Cole*, 289 S.W.2d 695, 698 (Tenn. 1956), another kind
> of notice occupying what amounts to a middle ground between constructive notice
> and actual notice is recognized as inquiry notice.  Some authorities classify inquiry
> notice as a type of constructive notice, but in Tennessee, it has come to be considered
> as a variant of actual notice.  "'The words "actual notice" do not always mean in law
> what in meta-physical strictness they import; they more often mean knowledge of
> facts and circumstances sufficiently pertinent in character to enable reasonably
> cautious and prudent persons to investigate and ascertain as to the ultimate facts.'"
> *Texas Co. v. Adcock*, 227 S.W.2d 41, 46 (Tenn. 1950) (citation omitted).  Even a
> good faith failure to undertake the inquiry is no defense.  *Id.*, 227 S.W.2d at 46.
> Thus, "'[w]hatever is sufficient to put a person upon inquiry, is notice of all the facts
> to which that inquiry will lead, when prosecuted with reasonable diligence and good
> faith.'"  *City Fin. Co. v. Perry*, 257 S.W.2d 1, 2 (Tenn. 1953) (citation omitted).

*Blevins*, 746 S.W.2d at 683.  The concept of inquiry notice has been further explained by the

Tennessee Court of Appeals as follows:

> 'Notice of a prior interest which will be effective to charge a subsequent purchaser
> with knowledge of its existence may be either direct information of the prior right,
> or may consist of information of facts from which actual knowledge may be inferred;
> the notice need not be actual, but may be constructive or implied.  It need not contain
> complete information of every fact material for the purchaser to know.  Where actual
> notice of an outstanding interest is duly given, the purchaser is chargeable with notice
> of all that an inquiry of the person giving the notice of the outstanding interest would
> have disclosed.'
>
>          . . .
>
> Notice is either actual or implied.  When anything appears which would put a man
> of ordinary prudence upon inquiry, the law presumes that such inquiry was actually
> made, and therefore fixes the notice upon him as to all legal consequences.

*Aslinger v. Price*, 2006 WL 2521566, at *5, 2006 Tenn. App. LEXIS 584, at *12-13 (Tenn. Ct. App.

Sept. 1, 2006) (quoting *Williams v. Title Guar. & Trust Co.*, 212 S.W.2d 897, 901 (Tenn. Ct. App.

1948) (citations omitted)).  Accordingly, purchasers "'may not close [their] eyes and ears and

22

thereafter claim a lack of knowledge,' relying on willful ignorance, and thereafter claim to be a bona

fide purchaser." *Aslinger*, 2006 WL 2521566, at *7, 2006 Tenn. App. LEXIS 584, at *19-20

(quoting *Wells Fund I v. Shoe Show of Rocky Mount, Inc.*, 863 S.W.2d 731, 733-74 (Tenn. Ct. App.

1993)).

In his Affidavit, Mr. Bondurant testified that he reviewed each of the instruments in the chain

of title between September 12, 1970 and September 12, 2010, and no reference is made within any

instrument to the Deed of Trust or any information which would lead to inquiry of the Deed of

Trust.[4] BONDURANT AFF. at ¶ 9.  Nevertheless, Mr. Bondurant reported the Deed of Trust in his

Title Report to the Trustee as "inimical" or adverse to the "fee simple marketable character" of the

Debtor's title to the Shady Grove Road Property with the caveat "you should ascertain to your

satisfaction the effect of this Deed of Trust, if any, on the subject property." BONDURANT AFF. EX. B

at 1.  Additionally, Mr. Yates testified – and the Detail Information listing for the Quit Claim Deed

evidences – that a search of the computer title records for the Sevier County Register of Deeds by

entering the instrument number of the Quit Claim Deed results in cross-references to the instrument

numbers, books, and pages for the Warranty Deed and Deed of Trust.  YATES AFF. at ¶ 7;

PLAINTIFFS' STMT. OF UNDISP. FACTS COLL. EX. B.  These cross-references, clearly listing

instruments recorded the same year as the Quit Claim Deed and in the same book with page numbers

---

[4] The court's review of the Warranty Deed and the Quit Claim Deed confirmed that there is no specific reference
to the Deed of Trust in either document; however, the Oath on the face of the Warranty Deed states that "the actual
consideration for this transfer, or value of the property or interest in property transferred, whichever is greater, is
$144,500.00, which amount is equal to or greater than the amount which the property or interest in property transferred
would command at a fair and voluntary sale." BONDURANT AFF. EX. D; YATES AFF. EX. A.  It would stand to reason that
the stated consideration would put a bona fide purchaser on notice that there would most likely be a deed of trust to
secure a loan in that amount.

immediately preceding and immediately following that of the Quit Claim Deed, would be sufficient to put a bona fide purchaser on inquiry notice as to those cross-referenced instruments.[5]

Additionally, as argued by the Plaintiffs, the Warranty Deed, Deed of Trust, and Quit Claim Deed, having been filed simultaneously, constituted one transaction which would have put the Trustee on inquiry notice.  Under Tennessee law, courts are to give effect to the parties' intentions, and "[w]hen the parties' agreement is contained in more than one document, all the documents should be considered together."  *Ewing*, 1986 WL 2582, at *3, 1986 Tenn. App. LEXIS 2803, at *10-11; *see also Springfield Tobacco Redryers Corp. v. City of Springfield*, 293 S.W.2d 189, 197 (Tenn. Ct. App. 1956) ("Any number of papers may be taken together to make out the written expression of the contract of the parties, provided there is sufficient connection between the papers.").  There is no dispute that the Warranty Deed, Deed of Trust, and Quit Claim Deed were delivered to the Sevier County Register of Deeds together, in that precise order, and all were recorded on September 14, 2007, at 9:43 a.m., thus indicating a simultaneous transaction.  Although that fact, in and of itself, is not sufficient to put the Trustee on inquiry notice, when coupled with the cross-references to the Warranty Deed and Deed of Trust shown on the Detail Information listing, the court finds that there was sufficient information to put the Trustee on inquiry notice as to the existence of the Deed of Trust.  As such, he would not be a bona fide purchaser under Tennessee law and cannot use the strong-arm provisions of § 544(a) to prevent the imposition of an equitable lien against the Shady Grove Road Property in favor of Tennessee State Bank.  The court will impress

---

[5] Mr. Yates also testifies that a search of the computer records using the Thomases' names results in a reference to the Deed of Trust as well as other documents.  YATES AFF. at ¶ 7.

the Shady Grove Road Property with an equitable lien in favor of Tennessee State Bank which is superior to the interest of the Debtor and all other Defendants.

Accordingly, the Trustee's Motion for Summary Judgment shall be denied, and the Plaintiffs' Motion for Summary Judgment shall be granted.  An Order consistent with this Memorandum will be entered.  This Order will also provide that the automatic stay of 11 U.S.C. § 362(a)(4) (2006) will be modified to allow the Plaintiffs or the Defendant Tennessee State Bank to record the Order with the Sevier County Register of Deeds.

FILED:  January 17, 2012

BY THE COURT

*/s/  RICHARD STAIR, JR.*

RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE